JEANNIE F. CRANE, Respondent, *v.* JOHN F. EDWARDS, Appellant.

*Notice of a tenant's intention to leave demised premises before the end of his lease — what constitutes an acceptance thereof.*

The wife of a man who had a written lease of premises for one year from September 1, 1901, informed the lessor's agent on April 5, 1902, that the lessee intended to remove from the premises. Thereupon the agent went to the lessee and entered into a heated conversation which terminated in the agent's telling the lessee, "Well, move, I am glad of it." Some days thereafter a "to let" sign was placed upon the premises by direction of the lessor's agent without the consent of the lessee. The lessee then removed to another place and sent the key to the office of the lessor's agent by the direction of the latter.

A clause in the lease provided that if the premises should become vacant during the term the landlord might rent the same as the agent of the tenant, but the evidence was conflicting as to whether the lessor's agent notified the lessee that it was his intention to act under this provision of the lease. The lease contained a further provision that "on any day within ninety days preceding the expiration of the term" the lessee would "permit the usual notice of to let or for sale to be placed on the premises."

*Held,* that the action of the lessor's agent in telling the lessee to move and in posting the to let notice upon the premises constituted an acceptance of the lessee's surrender of the premises.

HIRSCHBERG, J., dissented.

APPEAL by the defendant, John F. Edwards, from a judgment of the Municipal Court of the city of New York, borough of Brooklyn, in favor of the plaintiff, upon the decision of the court.

*Walter E. Warner,* for the appellant.

*George W. Davison,* for the respondent.

WOODWARD, J.:

The facts of this case, which are undisputed or which appear to be established by a preponderance of evidence, are as follows: The plaintiff sues upon a written lease executed by the defendant, under which the latter entered into possession of certain premises for a term of one year from September 1, 1901. The facts alleged in the complaint are admitted and the defendant has established that on or about the 5th day of April, 1902, on the occasion of a visit of the plaintiff's agent for the purpose of collecting the rent due for that month under the terms of the lease, the defendant's wife

**334**          CRANE *v.* EDWARDS.

informed the agent that they were going to move out, whereupon the agent went to the defendant and entered into a heated conversation, which terminated in the agent telling the defendant : " Well, move, I am glad of it." Some days subsequent to this conversation a real estate agent, acting as the agent of the plaintiff's agent and by the latter's direction, posted a sign upon the premises, stating that the same were to let. The defendant did not consent to the placing of this sign upon the premises, and did not know of its being placed there until after it was posted, and he then found a place and moved into it, sending the key, by the direction of the real estate agent, to the office of the latter. There is a clause in the lease, which is in evidence, which provides that if the premises become vacant during the term, the landlord may rent the same as the agent of the tenant, and the agent of. the plaintiff claims that he called the defendant's attention to this lease at the time of the conversation and told the defendant that he would be held to the terms of the lease, but this is denied by the defendant, who is corroborated by a disinterested witness, and there is no room to doubt that the defendant was told to move, and that plaintiff's agent expressed satisfaction at the prospect of his going,. and that plaintiff's agent subsequently directed the posting of the " to let " notice.

A long line of authorities supports the rule that " a surrender is implied, and so effected by operation of law within the statute,* when another estate is created by the reversioner or remainderman with the assent of the termor, incompatible with the existing state or term" (*Gray* v. *Kaufman Dairy & Ice Cream Co.*, 162 N. Y. 388, 395, revg. 16 App. Div. 631, and revg. the rule of 9 App. Div. 115), and it can hardly be questioned that the posting of a notice " to let " upon the premises in the occupation of the defendant, under the circumstances, would be incompatible with the existing state or term.

The plaintiff, knowing the intention of the defendant to leave, and having assented to his leaving, and while the premises were still in the possession of the defendant, who had paid his rent for the month of April, entered upon the property and posted a notice that the same was for rent, thus by an affirmative act assuming dominion over the premises, and must be deemed to have accepted

---

* 2 R. S. 134, § 6, now contained in Laws of 1896, chap. 547, § 207.— [REP.

the surrender. The parties agreed in their lease, which the plaintiff put in evidence, that " on any day within ninety days preceding the expiration of the term " the lessee " will permit the usual notice of to let or for sale to be placed on the premises, and remain thereon where placed, without molestation," and the plaintiff having elected to place such a sign upon the premises, and the defendant having permitted the same to remain there during the time that he occupied the premises, which was within ninety days of the expiration of the term as fixed by the conditions of the surrender, though not within ninety days of the expiration of the term fixed by the lease, she must be deemed to have consented to the surrender. Under no other condition could she have had the right to post the notice of to let.

Reading *Underhill* v. *Collins* (132 N. Y. 269) in the light of the subsequent discussion in *Gray* v. *Kaufman Dairy & Ice Cream Co.* (9 App. Div. 115) and the same case in 162 New York, 388, we are persuaded that the defendant, under these facts, is not liable for the rent after the month for which the rent was paid in April, 1902, because the relation of landlord and tenant came to an end at that time.

In the *Gray Case* (162 N. Y. 395) it was conceded that the defendant's offer of surrender was declined by the plaintiff, and that after the defendant's abandonment of the premises the plaintiff relet the same in his own name to one Mary Ann Keogh for a term of three years and five months, and the court say : " Such a situation, unqualified by other conditions, would create a surrender by operation of law." In the case at bar the plaintiff accepted the offer of surrender, made use of the reserved power to post a notice of to let during the last ninety days of the term, and she cannot, because she has failed to find a tenant, collect the rent from this defendant during the remainder of the term for which the lease was made.

The judgment should be reversed.

GOODRICH, P. J., and BARTLETT, J., concurred; HIRSCHBERG, J., read for affirmance.

HIRSCHBERG, J. (dissenting) :

I cannot concur in the decision which the court is about to make in this case. When an action is tried upon conflicting evidence

which would fairly support a decision either way, I am averse to a reversal by an appellate court merely because that court believes from an inspection of the return that it would or might have decided the case otherwise. Here, it must be borne in' mind, the burden of proof was on the defendant. It was incumbent upon the tenant to establish by a fair preponderance of the evidence that the landlord had voluntarily accepted a surrender of the lease, and had relinquished in April all right to the rent reserved for the balance of the term ending in September. The proof offered to establish such surrender and acceptance was the statement on the tenant's part that the landlord's agent, a Mr. Taylor, on being informed that the tenant intended to move, replied in effect, " move, I am glad of it." This, although corroborated by a witness, was denied by the agent, and would seem to be further denied, or at least contradicted, by the facts that subsequently due rent was demanded, an action was brought to recover it, the tenant was shown to be a prompt payer, the landlord had frequently made repairs at the tenant's request, although not required to do so by the terms of the lease, the usual renting period had passed, and it was impossible, as the event proved, to rent the property again during the unexpired term.

Under these circumstances the conclusion reached on appeal should be guided by what Presiding Justice GOODRICH said in *Richards* v. *Schiff* (44 App. Div. 618), viz. : " Possibly we might have concluded that the plaintiff had not the preponderance of evidence, if we were sitting as a court of first instance, but, as an appellate court, we are not controlled by such reason. We can only examine the record to ascertain whether there is sufficient evidence to sustain the findings, in the hypothesis that the trial court gave greater credence to the testimony of the witnesses for the prevailing party than it gave to his opponent." Or, as was said by Chief Judge RUGER, in *Baird* v. *Mayor* (96 N. Y. 567, 576): " In reviewing the determination of a trial court upon questions of fact, an appellate tribunal is not warranted in reversing upon the sole ground that, in its opinion, the trial court should have reached a different conclusion upon conflicting evidence. * * * To justify a reversal it must appear that such findings were against the weight of evidence, or that the proofs so clearly preponderated in favor of a contrary result that it can be said with a reasonable degree of cer-

tainty that the trial court erred in its conclusions. * * * But when there is evidence on both sides, and the case is balanced and the mind of the court has been called upon to weigh conflicting statements and inferences, and decide upon the credibility of opposing witnesses, much weight must be accorded to the especial adaptation of the trial court to investigate and determine such questions. Any other rule would nullify the peculiar advantages which that tribunal possesses in observing the manner and appearance of the witnesses produced, and the various physical and mental peculiarities by which the mind of the professional observer determines the degree of credit which ought prudently to be attached to oral testimony."

The fact that a "to let" notice was posted by the landlord is of no prejudicial significance. This was not only authorized by the express terms of the lease, but was within the landlord's power in the absence of such a reservation, upon the declaration of the tenant's purpose to vacate the premises and to abandon the property. (*Underhill* v. *Collins*, 132 N. Y. 269.) Nor was the landlord required to return the key. (*Thomas* v. *Nelson*, 69 N. Y. 118.)

The case appears to have been carefully tried without error, and to have been carefully considered. The magistrate, Hon. WILLIAM J. LYNCH, has written an excellent opinion, which I adopt, as follows:

" LYNCH, J. This is an action to recover rent for the month of May. The defense is based solely on a voluntary surrender of the premises, and an acceptance thereof by the landlord. (See Answer.) The late Justice McAdam, in his treatise on Landlord and Tenant, discusses at length the question as to what constitutes a surrender and acceptance within the meaning of the law (see McAdam's Landlord and Tenant [3d ed.], 1263–1266 *) and the defendant has not, in my judgment, brought himself within its provisions. A plea of surrender and acceptance can only be sustained on the voluntary act of the landlord or of some affirmative act on his part tantamount to a waiver of the terms of the lease — elements essentially lacking in the case at bar. So far from consenting to the attempted surrender, the plaintiff's agent distinctly called the defendant's attention to the

* Vol. 2. — [REP.

fact that his lease would not expire until September 1, 1902, and that if he moved he would try and rent the premises to defendant's account. He followed this up by making a demand on defendant for the rent for the month of May, and bringing this action to enforce his demand. In addition to this, there was no good reason why the plaintiff should accept a surrender, as the defendant paid his rent punctually, and the fact that Mr. Taylor displayed anger when defendant said he intended to move tends to show that he did not acquiesce in the stand the defendant was taking. The reason assigned by defendant for the giving of Mr. Taylor's consent to the surrender, that he had been receiving complaints ever since defendant was in the house, was not sustained. Ordinarily, the obligation to make repairs is not imposed upon the landlord unless there be a covenant in the lease providing for same, and there is no such covenant in the lease in question.

"Where there is no agreement in the lease requiring the landlord to repair, necessity for repairs will not justify the tenant in abandoning the premises. (See McAdam L. & T. [3d ed.] 1282.*) Despite the fact that the lease imposed no obligation on the plaintiff to make repairs, the plaintiff did make repairs, but it appears that the defendant was dissatisfied with the repairs as made and that plaintiff made every reasonable effort to comply with defendant's wishes.

"On the question as to the character of the evidence necessary to be given to constitute an acceptance of a surrender, see the following cases: *Requa* v. *Domestic Pub. Co.* (11 Misc. Rep. 323); *Kelly* v. *Noxon* (64 Hun, 281, 283); *Wallace* v. *Dinniny* (11 Misc. Rep. 317, 319).

"The evidence here on the part of the defendant does not bring the case within the requirements of these authorities.

"So it has also been held that where a tenant abandons the premises and sends the keys to the landlord, the landlord is not bound to tender a return of them, and a retention thereof does not amount to a surrender and acceptance. (See *Doolittle* v. *Selkirk,* 7 Misc. Rep. 722; *Thomas* v. *Nelson,* 69 N. Y. 121.)

"It has also been held that a landlord who, upon refusing to accept a surrender, notified the tenant that he would hold him for the rent

---

*Vol. 2.— [Rep.

and would rent the premises on the account of the tenant (as was this case) could still hold him for the rent stipulated in the lease, less the amount received from the new tenant. (See *Underhill* v. *Collins*, 132 N. Y. 269.) In this case it appears from the evidence that there has been no subsequent letting as yet, as the premises are still unoccupied.

"Nor does the fact that a 'to-let' sign may have been placed on the premises prejudice the plaintiff's rights in any way. As was aptly said by Judge HAIGHT in *Underhill* v. *Collins* (*supra*, 271–2), it rather enures to the benefit of the tenant, as it tends to reduce his liability for the full rent and at the same time not avoiding the tenant's liability under the lease.

"The plaintiff is entitled to judgment for the sum of thirty-five dollars for the rent of the month of May with costs."

Judgment of the Municipal Court reversed and new trial ordered, costs to abide the event.