(45 Misc. 363)

### GUTMAN v. CONWAY.

(Supreme Court, Appellate Term. November 10, 1904.)

1. LEASES—SURRENDER BY OPERATION OF LAW.

There is a surrender of a lease by operation of law where, on the tenant abandoning the premises, the landlord relets them, there being no provision in the lease allowing the landlord to relet for the benefit of the tenant, and there having been no agreement therefor by implication or otherwise, but the tenant having paid money for the time he had occupied, and said that the person he had sold out to would pay the remainder, and the landlord having told him that he would hold him responsible for the lease.

Appeal from Municipal Court, Borough of Manhattan, Eleventh District.

Action by Arthur Gutman against Robert H. Conway. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before FREEDMAN, P. J., and BISCHOFF and FITZGERALD, JJ.

Thomas F. Keogh, for appellant.
S. C. Sugarman, for respondent.

FREEDMAN, P. J. The action was brought to recover the sum of $240 for rent claimed to be due from the defendant to plaintiff's assignor under a written lease for five years from May 1, 1899. There was no clause in the lease permitting the landlord to relet the premises upon the tenant's account. The undisputed proof shows that the defendant vacated the premises in the early part of 1902. Subsequently the landlord let them successively to other tenants, namely, McAvoy for about three months, he being succeeded by one Olsen, who occupied them for about 11 months; Olsen being succeeded by one Harris, who retained possession until January, 1904. At the close of the case both sides moved for a direction of a verdict, and the court thereupon discharged the jury, took the case under advisement, and subsequently rendered a judgment in favor of the plaintiff. All disputed questions of fact

having been left to the court, it must be assumed that upon such questions the landlord's version is true. The only question, then, to be determined is whether or not there was, as is claimed by the defendant, a surrender of the lease by operation of law.

It was held in Gray v. Kaufman Dairy & I. C. Co., 162 N. Y. 388, 56 N. E. 903, 49 L. R. A. 580, 76 Am. St. Rep. 327, "that a surrender of leased premises is created by operation of law, although the landlord has declined an offer of surrender, where, after the tenant has abandoned them, the landlord lets them in his own name to a third person for a new term without the tenant's consent." In the case at bar the landlord's testimony was as follows: "He [defendant] handed me half a month's rent, and I told him I gave him the lease, and I held him responsible for the lease. He said the other tenant who would come in would have to pay me the rent, and I said I would hold him responsible for the rent." And on cross-examination he said: "He [defendant] came back, and told me he had sold out, and he paid me the half month's rent, and he said, 'You collect the other half from the new saloon keeper,' and I told him I held him responsible for the lease." In the case of Underhill v. Collins, 132 N. Y. 269, 30 N. E. 576, relied upon by respondent's attorney, before the tenant vacated the premises he had a conversation with the landlord, and requested the landlord to take the premises off his hands. This the landlord refused to do, and told the tenant he would hold him responsible for the rent, and would lease the premises for his benefit. It was there held that these facts rebutted the inference that the landlord had accepted a surrender of the premises arising from the reletting. The court said, "The plaintiff, in reletting the premises, did only that which he had promised and had a right to do." Page 271, 132 N. Y., page 577, 30 N. E. "It may be true that such reletting would operate as an acceptance of a surrender of the premises unless there is an agreement, express or implied, that such reletting may be made." Page 272, 132 N. Y., page 577, 30 N. E. No such situation is presented here. Nothing appears in the testimony in this case tending to show that the landlord proposed to relet the premises for the benefit of the defendant. The landlord simply asserted his right to hold the tenant responsible for the lease.

To create a contract by implication there must be an unequivocal and unqualified assertion of a right by one of the parties and such silence by the other as to support the legal inference of his acquiescence. Gray v. Kaufman Dairy & I. C. Co., supra. As before stated, there was no provision for a reletting in the lease. It was competent for the landlord to avoid the acceptance of the surrender, to make an oral contract with the tenant for a reletting of the premises for his benefit, and it would be some evidence of such a contract for submission to the jury if the landlord had told the tenant he would relet the premises on the tenant's account and the tenant had remained silent. "No right to relet for their [the tenants] benefit existed unless they assented thereto. If, without such assent, the landlord relet the premises, such act amounted to an acceptance of the surrender. * * * If such assent was given, and

the plaintiff acted thereunder, then the plaintiff became entitled to recover. If no assent was given, or plaintiff acted for himself, then this action cannot be maintained." Gray v. Kaufman Dairy & I. C. Co., 9 App. Div. 115, 119, 41 N. Y. Supp. 73. There is no claim made here that the defendant assigned his lease. Where a lease is assigned the assignee is bound to the landlord by virtue of privity of estate, and the lessee remains liable by virtue of privity of contract. The question clearly shows that at least Olsen, who went into possession of the premises as a tenant about three months after they were vacated by the defendant, and that Harris, who occupied them from the time Olsen left until January, 1904, were not assignees of the lease, but were there as tenants by virtue of a reletting of the premises by the landlord. Under the circumstances disclosed by the testimony in this case it must be held that there was a surrender of the premises by operation of law, and the judgment herein must be reversed.

Judgment reversed, and new trial. ordered, with costs to the appellant to abide the event. All concur.